Your Honor and may it please the Court, Chris Cradeville on behalf of the appellants whom I will refer to today as the IBC parties. The question before the Court today is a narrow one. It arises in the posture of an interlocutory appeal, and that narrow question is, did the District Court err by denying IBC's motion to compel arbitration? The basis, the narrow basis for the District Court's holding is that the plaintiff appellee, Mr. Paul Parrott, is a former participant in the plan who did not individually consent to arbitration and who did not receive any consideration when the plan was amended by the addition of an arbitration clause. But because Mr. Parrott asserts claims that belong to the plan itself as well as to a putative class of plan members, his individual consent is irrelevant to those plan and class claims, and the valid amendment of the plan to add an arbitration provision, that is the consent that is relevant, the plan's consent to arbitration. In simple terms, claims asserted on behalf of the plan are subject to arbitration, and it was error for the District Court to deny arbitration on those plan-controlled or plan-owned claims. Does that apply only to 1132A2? I believe so, Your Honor. The plaintiff has asserted three breach of fiduciary duty claims, all of which invoke that statutory subsection. Those are plan claims. He asserts, his complaint is correct and detailed on this, he asserts each of those three breach of fiduciary claims on his own behalf, on behalf of the plan, and on behalf of the putative class. So while I think there may be an argument that his individual claims are not subject to the arbitration clause, I don't think there's much of an argument at all that the plan claims and the class claims are indeed subject to arbitration under the 2024 amendment to add the arbitration clause. Does that make any problems with him as the representative? That is a question for another day, Your Honor, but we certainly believe that in terms of his adequacy and typicality, that is a question the District of Columbia has to answer. Just the opposite, Your Honor. He was a relatively short-term member of the plan. On the face of their complaint, they allege he was with IBC from 2018 to 2021. But he didn't participate. Any benefit would be illusory as to him, personally. I think there's some very strong typicality and adequacy arguments that when this case moves into its next phase, when this threshold question of arbitration has been resolved by this court, whether it's being handled by an arbitrator or by the district court, there are serious problems with Mr. Parrott as a class plaintiff, given that he's, in a sense, got to take the bitter with the sweet, Your Honor. The reason he's avoided arbitration is he was out of the plan by 2021, and the arbitration provision was not added until 2024. So the district court reasoned that he received no consideration for the amendment to add arbitration. But all of the current beneficiaries or members and beneficiaries, participants who are still part of the plan or who stayed after Mr. Parrott left, they would be bound by the arbitration provision. But this is not a class of just retired people? No, Your Honor. It's plan participants. Okay. So if it was a class of just retired people, would the argument work? I don't believe so, Your Honor, because the gravamen of their lawsuit is this is a defined contribution plan. In other words, a 401k plan. It is not a defined benefit plan, which I think does take a somewhat different... There are fewer and far between of those these days. Go ahead. You're quite correct, Your Honor, for better or worse on the way of the dinosaur. But this is a 401k plan. What makes it a little bit unusual for a 401k plan, it's not self-directed. It's not participant-directed. It's directed by a committee. And the gravamen of their lawsuit on the merits is that the committee breached its fiduciary duties by having an inadequate investment mix that could have realized more gains. They don't complain that the plan lost money. They say there could have been more gains. That's what they seek to recover on behalf of the plan itself and its class members. But again, the problem here, I'm happy to go into the allegations and the petition. We're here on a very narrow threshold question of whether these merits questions, when they are examined, are to be examined by an arbitrator or by the district court. Are you contesting that his individual claims should be litigated? Your Honor, I think the district court's reasoning makes sense as to the individual claims only. So you're envisioning parallel proceedings? I mean, there will be litigation on his claims individually, and then the class claims as well as the claims on behalf of the plan would be arbitrated? He could, of course, always consent to arbitration and be part of the arbitration action. But if he does not consent, and if the district court is correct that the timing of his departure from the plan relieves him of the obligation to arbitrate, whereas the rest of the plan members, the plan itself, are not relieved of that arbitration, then, Your Honor, if he would not consent, I fear there would be parallel proceedings. Well, you could also have, I suppose, subclasses of people in Mr. Parrott's position whose claims would be litigated also. So you might even have double class actions. Your Honor, that is a question for another day, but that is a viable scenario. But in terms of the bifurcation of the individual claims from the plan or class claims, the precedent, it's a sister circuit precedent, but that I would direct the court to is the Ninth Circuit's recent case, 2025 case, in Platt v. Sodexo. It's cited in our papers, but a lot of the features that are characteristic of this case are found there. There is a plan member who is not individually subject to arbitration, but like Mr. Parrott, is bringing claims on behalf of the plan itself and on behalf of a putative class. And as in this case, there's also a very strong severance clause that if any portion of the arbitration agreement should fail, it is severed and the rest would continue. And indeed, the Ninth Circuit in Sodexo performs that exercise. But we would probably want to remand, wouldn't we, for determination of severability and what can be severed? Judge Smith, I believe that would be a question for remand. So I think if this Court were to rule that the District Court erred by failing to distinguish between the plan claims and the class claims on the one hand, and between Mr. Parrott's individual claims on the other hand, then I believe a remand for the District Court to perform that exercise as well as any severance that may be required. Because I think when my friends on the other side get up here shortly, you will hear about something called the effective vindication doctrine. I was going to ask you about that. Well, I'm happy to engage with the effective vindication doctrine, Your Honor. I think it's an initial matter I must point out. It's not the basis for the District Court's holding. It's an alternative basis for affirmance that they have urged. And they have a right to say we can be affirmed, the Court can be affirmed on any ground. They do. That's the way it works here. So tell us why that doesn't work. Several reasons, Your Honor. First of all, they're asking this Court to make new law in the Fifth Circuit. The Fifth Circuit has never recognized or applied the effective vindication doctrine, and certainly not in the ERISA context. Nor, perhaps more importantly, has the United States Supreme Court. The Eleventh Circuit recently did, though. Just a couple weeks ago. Indeed, Your Honor. And there is a trend that is against my position here with some of this Court's sister circuits. But we're not bound to not apply it, right? We don't have authority anyway. You're welcome to look at the former Fifth Circuit unit B, our friends in the Eleventh Circuit's persuasive authority. But what I find more persuasive in the sister circuit authority that I would direct this Court to when it considers effective vindication is Judge Menasche's dissent in the Second Circuit case that both parties have invoked in their briefs, Cedeno v. Sassone, which is 100-F4-386. Judge Menasche has a very lengthy, detailed dissent why he does not believe that there is a fundamental incompatibility between the FAA, Federal Arbitration Act, on the one hand, and ERISA on the other. And so, Judge, I think there are several reasons that effective vindication should not apply. I've noted it was not applied by the District Court, but it is a judge-made doctrine. I know this circuit is a textualist circuit and does not like to stray beyond the text of statutes. We've got qualified immunity, and that's a judge-made doctrine, too. We have many judge-made doctrines. But there's also the text of the statute going on here also, and that is that to the extent – and I don't know that this is effective vindication or just a problem with the severance clause – you've got this language in the arbitration agreement that says no representative claims, only individual claims. Well, the statute says that a plan participant can proceed on behalf of the plan and vindicate the plan's rights and vindicate whatever the plan's losses, damages have been. So it strikes me that there's a problem there. Is that effective vindication, or is that just contrary to the statute? So therefore, the severance clause is void. It is a form of effective vindication, Your Honor, but that's why the severance clause is of such great importance here. And I would note that a couple of the cases that they rely on, and indeed the principal case that the district court relied on, which was Coleman v. Brozin out of the Northern District of Texas, Judge Ada Brown in the Northern District, that specifically had a non-severance clause. It was the exact opposite of this case where we have a severance clause. But you're saying, though, that to sever or not to sever is a question for the district court on remand? Exactly, Your Honor. To the extent, why wouldn't we reach that here, though, if the basis for the arbitration 1132A2 makes it very clear that that clause, the clause saying no representative claims, is void? So, Your Honor, I'm just following sort of what the Ninth Circuit did in Plant v. Sodecco, which is the closest procedural posture to this, where they sent it back for that application of that delineation between individual claims, planned claims. Actually, I think there was a severance clause, now that I think of it, in Sodecco that the Ninth Circuit did apply. So if this court wanted to apply that severance clause, which is plain English, classic severance clause, designed to protect against this very scenario, where one portion of this rather lengthy, complicated arbitration procedure is deemed invalid, the rest of the procedure survives. The portion of the procedure here that is at least potentially invalid, and I believe my friends on the other side will urge is invalid, is the prohibition on class or collective action. We don't make that concession. We recognize that is in play, and that is before the court. But we would urge that there is a fundamental confusion between a substantive right or substantive remedy on the one hand, and a procedural device, a procedural mechanism on the other. This court and the Supreme Court have consistently found that class and collective actions are not a substantive right, but rather a procedural device. So to the extent they are complaining that they have been deprived of a procedural device they would like to avail themselves of, that's not the same. Well, there are two different issues, though. I'm really focused on the representative claims on behalf of the plan. And as I apprehend IBC's position, and it's been a minute or two, and I slept a couple times since I read the briefs, but as I apprehend your position, well, yeah, you can proceed on behalf of the plan, Mr. Parrott, but all you can recover, the only thing at play is your individualized, atomized part of the damages of the plan. That's contrary to the statute. I would respectfully disagree to some extent that that's the relief we're seeking. Any declaratory or injunctive relief or alteration via judicial declaration of the plan rules, or removal of a fiduciary via judicial decree, any sort of injunction, all of that is plan relief that Mr. Parrott can get. Yeah, but I thought the statute said damages make, you basically, an individual can vindicate a plan and make it whole. That includes money. And that gets into, Your Honor, the distinction that I tried to draw earlier between a classic defined benefit plan, which is the origin of that law in the U.S. Supreme Court 40 years ago, and the move now towards defined contribution plans, where that is an individualized calculation, where every 401k is different, whereas every defined benefit plan, every pension, pensioners are on the same formula of 401k defined contribution plan. It's different. And we think that Mr. Parrott can certainly recover any pecuniary loss that he has suffered in his individual 401k. Why can't he vindicate the plan's losses? Because I think that would require participant by participant look at their individual 401ks, which he does not control and does not have access to. But Your Honor, my fallback position would be that's where the severance comes in. And that if there is going to be a class or collective action, if Mr. Parrott is going to vindicate the rights of the entire plan, that may be his merits-based right under the  But that still has to take place in an arbitration with the one problematic provision severed. And I see my time's up. I think we're also trying to figure out who does the severing. Is it us? Is it the district court? Or is it the arbitrator once it's compelled? I believe the severance would be a question on remand for the district court, as the Ninth Circuit held in the Sodexo case. So if you believe that severance would be required, then we would need to, we would the district court consider effective vindication and severance and all of that, right? That would be fine with you. That would be one perfectly valid approach for this court to follow, Your Honor. Instead of wading into this. And then my second question is, what is the lay of the land vis-a-vis the circuits on effective vindication? Second, 11th, what else? The 11th, the Third Circuit, and then the, I will defer to my friends on the other side, but I believe that at the circuit level, there are certainly district court cases that go the other way that we've cited. But Second, 11th, Third, and Ninth all go the effective vindication way? Yes, Your Honor. And which ones go the opposite way? I would again say that Judge Menasche's dissent in the Second Circuit. Judge Menasche stands in the dissenting, the opposite. Yeah, but all of that Sister Circuit authority is merely persuasive authority as is his dissent. Of course, of course. But we'd like to get the lay of the land when we're going to have to wade in on something new if we are. If this court were to rule there's no such thing as effective vindication, that would create a circuit split. Thank you. Thank you, Your Honor. May it please the Court, Reginald Patrick for Appellee Paul Parrott. Your Honor, I'd like to start with the A3 claims. I do think the district court correctly denied arbitration of the entire lawsuit, but it's important to distinguish between the A3 claims and the A2 claims as has already been done. I believe that my friend is conceding that the A3 claims must proceed in court. But to the extent that that's not a full concession, I do think it's important to note that they haven't acknowledged those claims in their briefing and they're really only coming up for the first time in argument, and so their ability to challenge the court's decision as to the A3 claim is waived. That means that they have to move forward in court. I know that Your Honors had some questions about class certification. I think those questions are premature at this time. Mr. Parrott may move for class certification when he moves forward in court, but whether Rule 23 is satisfied or not is really not a question for today. Now, on the A2 claims, I think there are three bases for affirmance here, and the first is effective indication. The district court didn't reach that question, but it is nonetheless a straightforward basis for this court to affirm. I urge the court to join the Second Circuit, the Second Circuit in Zedeno, the Third Circuit in Henry, the Sixth Circuit in Parker, the Tenth Circuit in Harrison, the Eleventh Circuit in Williams. There are a number of courts that have held the Seventh Circuit, also in Smith, have all recognized the effective indication doctrine and used it to invalidate arbitration clauses like this one, and specifically, a number of courts have held that the representative action waiver, sorry, I think I omitted the ninth in Platt v. Zdeck, but a number of courts have held that the representative action waiver is invalid, and so too is the limitation on remedies. Participants under ERISA are entitled to seek restoration of all plan losses, and my friend's argument indicates that he doesn't agree with either one of those. He doesn't agree that participants should be allowed to bring representative claims. He doesn't agree that participants should be allowed to seek full plan-wide losses, and this Court should hold firmly that participants do have those statutory rights, and that they can't be made to waive those rights in arbitration. Now, I think that my friend's position is indicative of the fact that he — But that's for another day, because, I mean, you know, the reason Mr. Parrott's claims are not arbitrable is because he didn't agree to arbitration. It strikes me there's a little tension in your position in that he's traveling under the clause and the agreement when it's sort of convenient, but he's not traveling under it when it's not. You can't have that both ways. So the very simple, straightforward question before us is, did he agree to arbitrate his  Did he not? Did the plan agree to arbitrate its claims? Did it not? And the answers are pretty straightforward. He did not. The plan did. So shouldn't we just reverse on that ground and send it back for the district court to continue? So with all due respect, Your Honor, I think that we're not trying to have it both ways. I certainly appreciate that sentiment, but I think on the A2 claims, the reason why we're not trying to have it both ways is that A2 confers the right to bring the suit on a category of litigants, the participants, fiduciaries, secretary of labor. So it makes sense to focus on the litigants' consent to arbitrate. But it's for the plan. It is on behalf of the plan. That is true. It's on behalf of the plan. And the plan agreed to arbitrate. Well, so I don't think that the plan agreed to arbitrate, Your Honor. If the plan did agree to arbitrate, though, it's going to arbitration, correct? Well, if you disagree with us that the litigants' individual consent is required for A2 claims, and you also believe that the plan consented to the arbitration of the A2 claims, then we still have, I think, an effective indication problem with those A2 claims going into arbitration. They have, the A2 claims have to be allowed to move forward on a representative basis. And the litigant has to be, the arbitration claimant has to be allowed to get full plan-wide losses. Well, that's, that's scope of the claims. That's not forum for the claims. All that can happen in the context of an arbitration, whether those causes are void or not void. Well, I think, Your Honor, that if the arbitrate, if the representative action waiver and the remedy limitation are not held, are allowed to remain in place, then. No, I'm saying, even if they're void, it still goes to arbitration, just without those provisos or those qualifiers. Yes. If you disagree with us on both of our consent arguments, and you remanded the district, and then you have to remand to the district, and you remanded the district court to decide effective vindication, then the plans claims, the A2 claims, Your Honor, couldn't move forward in arbitration. Just to be clear, Your Honor, I don't think that the problematic language in the, is severable. I think that H1 is the most specific, speaks to this most specifically. But assuming that you disagree with that, I just want to be clear about what arbitration would need to look like. Arbitration of the A2 claims, which would be happening in parallel with the court deciding the A3 claims, arbitration of the A2 claims has to mean that Mr. Parrott, as a representative of the plan, can get all of the relief that the plan would be entitled to get. And that means restoration of all the losses suffered by the plan as a result of the imprudent investing. Well, I think you and I may, with counsel opposite, you and I may read the statutory language similarly in that that's what I see the statutes providing between 1132A and 1109. It doesn't speak to individualized, atomized recoveries by individuals or, you know, anything like that. So there's a tension between the language of the arbitration agreement and the statutes. The statutes are going to control all that, correct? I don't know that that gets into effective vindication or doesn't, or any tension between the Federal Arbitration Act and ERISA as much as it does what ERISA allows a plan participant to recover on behalf of the plan. So Your Honor, I agree with you on half and disagree with you on the other half. I don't think that there's a conflict between ERISA and the FAA. In fact, we think that we're reading ERISA and the FAA in harmony when we apply the effective vindication doctrine. But I do disagree with you that the effective vindication doctrine doesn't come into play here. And the reason that it does is because the FAA does not allow our claimants to be required to give up their statutory rights in order to go into, or when they go into arbitration. And that's what this arbitration clause purports to do. And so it's important to hold that it is not allowed to do that. When an arbitration clause- It's for us to hold. Well, I- Or send it back to the district court and you can litigate it. Your Honor, you could certainly do it. You could go either way. It would be permissible for this court to remand to the district court to consider effective vindication in the first instance. Well, is that the preferred thing to do since the district court didn't develop this at all? The district court didn't engage it. Was it put before the district court? It was put before the district court. I do think, Your Honor, in light of the number of courts, other courts that have held that effective vindication applies, this court can and should join them in holding that ERISA participants have these statutory rights and that arbitration clauses that attempt to take those rights away are impermissible. Would we create a circuit split, as your friend on the other side, I think, conceded, if we were to hold the opposite? Yes, Your Honor, you would be. If you were to hold- if you were to reject the application of the effective vindication doctrine or hold that ERISA participants don't have a statutory right to proceed as representatives and to seek plan-wide losses, you were to disagree with- if you were to hold any of those things, you'd be creating a circuit split. So I don't think that you should do that, in fact, and I think you should take this opportunity to join the number of other courts that have recognized what arbitration clauses can and can't do and what they should and shouldn't do. Plan sponsors should not be writing clauses like these, and I think my- I think in terms of talking about severance for a moment, my friend uses that as a fallback argument, but I think that the most specific provision that is H1 here, and what it says is that they are not agreeing to representative arbitration, and so they don't want the representative action waiver and the remedy limitation to be stricken from the clause. They don't want this kind of arbitration at all. Well, that gets into the whole, would they have entered this agreement without these provisions or would they have not? I mean, that goes to whether it's severable or not severable, right? That does go to whether it's severable or not severable, and I think you could hold that it is not, and I think you could hold that the entire arbitration clause is void because of the way that they've chosen to make the representative action waiver and remedy limitation central, and that's why I think this is an independent basis for affirmance. Now, can you- okay, so can you get through your- you had three points, and you did one of them. Yes. So what are your other two? So the remaining two points, and Judge Wilson may have already signaled where he was on these, but I think the remaining two points are, first, that Mr. Parrott's individual consent as the litigant authorized under A2 to bring the claim on behalf of the plan, his individual consent is required before the A2 claims can be compelled to arbitration, and then the third, and I'll just preview, and finally, even if you disagree with me, even if you think that Mr. Parrott's individual consent is irrelevant to the A2 claims, then the plan didn't consent here, and the reason that the plan didn't consent here is because no one speaking on behalf of the plan has manifested agreement to arbitrate. So just to back up for a moment, the only reason that ERISA claims are arbitrable is because of the FAA. That's the only reason they can be in arbitration. Our FAA imposes an agreement requirement. It is a rule of the FAA that consent is fundamental. Now, my friend's briefing indicates that he thinks that the FAA consent and agreement requirements don't work in the world of ERISA claims, but that's wrong. The ERISA is explicitly intended to be read in harmony with the FAA. It's not intended to modify or displace the FAA's consent requirement. So what that means is that when a litigant comes before the court, the litigant, if they're going to be sent to arbitration, has to have entered into an agreement to arbitrate, and Mr. Parrott didn't do that. He's asserting the claims on behalf of the plan. The plan can't come into court itself. It's not enumerated in A2, so we should look at his consent. That's what makes sense and is consistent with the language of 1132 and most consistent with the FAA. Now, to be sure, there's some tension with Platt v. Sodexo. The court in Platt v. Sodexo did focus on the plan's consent, not the individual litigant's consent, but I would urge this court to hold that the individual litigant's consent is what matters, and because it obviously wasn't present here, that's a reason to affirm. Where's the authority for that? Well, that comes from the FAA itself, Your Honor. But is there a case that recognizes that the litigant's consent is what is crucial here? There's not a case that confronts the specific question of whether it should be an ERISA plan or the litigant and holds that it should be the litigant and that the litigant needs to have consented. No circuit court has yet held that. There are a number of district courts that have held that. The fact that that would be easier, if that were the law, that would be easier because it would mean that in every case, unless they could come forward with, oh, aha, you did consent by continuing to work or whatever, they would automatically say the plan didn't consent, and so we wouldn't even have to have this effective vindication doctrine if this number three argument was actually an argument. I mean, I'm just wondering if there's, so you're saying no court has ever held number three, right? So there are a number of... Number two, this individual consent is required by A2. Yes. And no one speaking on behalf of the plan has consented. I thought that was number three. That's number three. So with respect to the question of whether the, so if you disagree that Mr. Parrott's consent is relevant for A2, in other words, you may say, I don't care whether Mr. Parrott consented with respect to the A2 plan. But no one consented. There's no one that consented. The plan hasn't consented. Yes, the plan hasn't consented. So it seems like that would be an easy way to defeat arbitration in all these cases. So why is that not a prevalent theory if that's really viable? Well, so Your Honor, I think that, I mean, I'm not sure that I can answer the precise question of why that argument hasn't been made more often than the effective vindication argument hasn't been made. The effective vindication problem is very real in all these arbitration clauses, and I think it really jumps off the page, and that may be why. But if you had, if you could say, no one, there's, the plan didn't consent. Show me the plan consent, and everybody would stand there and dumbfounded, and we'd say, oh, there's no consent, and therefore this is irrelevant here, and we'd move on with the lawsuit. Yeah, I mean, I take your point, Your Honor, that this is also a powerful, I think these are equally powerful, they're both powerful arguments. It seems very straightforward if it actually worked, but the fact that it's never actually worked anywhere makes at least me a little nervous about it. Well, I understand that, Your Honor, and until 2021, we made the effective vindication argument, that hadn't yet been made either in the context of ERISA cases, but I will say, and there's not a court that has yet confronted the question of how the settler doctrine, how that doctrine plays out in the context of ERISA arbitration. But of course, it is well established that when an employer is asking to amend a plan, it is acting in its own interest, it is not acting on behalf of the plan. That's a doctrine that this court has applied on a number of different occasions. And you've recognized that when an employer is acting in its own interest, its business interest, it's not speaking on behalf of the plan. It's not a fiduciary. So all we're asking... But is this the way plans are amended? This is the way plans are amended, Your Honor, but if we're in the world... Well, that suggests that that tantamounts to the plan's consent. I don't think so, Your Honor, because the... So there's a whole lot of amendments to plans all over the country, then, that have never been consented into the plan. But, Your Honor, an amendment is only valid if it is consistent with ERISA. And arbitration clauses are not... If we're looking at ERISA in a vacuum, forget the FAA, you can't have an arbitration clause. So why can we have an arbitration clause? Only because of the FAA. The FAA brings in the requirement of plan consent. It works differently than the ordinary money run of ERISA plan terms. I think my friend's briefing indicates that it has to be the case that a plan amendment or a plan provision is the way you get arbitration in ERISA cases. Not so. There is no reason why we can't have ordinary agreements to arbitrate even under ERISA. That would be a perfectly reasonable way to proceed. A fiduciary... Fiduciaries can enter into agreements on behalf of the plan, and that can include an arbitration clause. That's what happened in the Berkelhammer case. And so there's no reason that we have to strain to figure out a way in which an arbitration clause can do all the work. And to be clear, they want it to do everything. They want the provision in the plan to be able to make all claims retroactive, prospective with everybody, arbitrable. That doesn't work. And there's a reason... And it shouldn't work that way. Well, I don't think it's going to because I think the other side has conceded. It's individual claims are going to be litigated. That's right, Your Honor. And because they haven't pressed that. But I think that their theory of the plan consent of an arbitration clause in a plan being able to effectuate plan-wide consent would extend... Would just be universal. It wouldn't matter against whom, with whom. And I think that's a problem. And I think the core problem here, Your Honor, is that we're asking something that's consistent with ERISA, which is that a fiduciary look at whether or not a plan's claims can be let a fiduciary make the decision. It's not difficult or onerous to ask a fiduciary to sign off on this. And so, I think that even though that is a novel argument, Judge Allright, I'm sympathetic to that. I don't think you're going out on a limb by asking for what is a very straightforward process in the world of ERISA plans. That is a fiduciary to review and approve something. I don't think you're going out on a limb by requiring that. And I think that that's an independent basis for affirmance. Even if you disagree with Judge Ezra that Mr. Parrott's consent is what we need for the A2 claims, you can independently affirm because if you choose not to affirm on effective vindication grounds, you can independently affirm on the grounds the plan didn't consent. I do just want to be clear, though, Your Honors, that if you... Well, if you affirm on the basis of consent, then there's no reason for you to reach effective vindication. Only if you disagree with us on both of the consent arguments that we're making. But in that instance, you would need to reach effective vindication at least to say that arbitration clauses cannot do what they're trying to do here. Yeah, you would do 2-3-1 if you were going to be logical about it, right? And they would have to run the table on 2-3-1. I think they do have to run the... If you're going to go in that order, they would have to run the table. I think as a logical... I think one could be a stand-alone basis for affirmance if you agree. If one is prevalent and that could be, you could just skip to one if you want. And I'm not foreshadowing. Understood, Your Honor. What are the A3 claims as opposed to the A2 claims? So the A3 claims are claims that Mr. Parrott is bringing in his individual capacity. These are not claims that are brought on behalf of the plan. And they are for appropriate equitable relief. It's based on the same misconduct as the A2 claims in that these are pledged. Each count is pledged under both A2 and A3. But he's able to seek equitable remedies under A3. A3 is a catch-all. It comes into play when a litigant can't... or a person can't get relief under other provisions. So they're a bit of a backup. But, of course, at this stage, it's more than permissible to plead in the alternative. For any number of reasons, if Mr. Parrott's A2 claim doesn't succeed, then his A3 claims could come into play here. But that's what they're seeking. And I do want to be clear that I think that the class action waiver is not a stand-alone provision. In other words, Mr. Parrott is going to be allowed to proceed in court on the A3 claims. And he will be allowed to seek class certification. And there should be no invocation of the arbitration clause at that point. I think that that's an important point to make. If you don't have any more questions, Your Honor. Thank you.  May it please the Court. I think it's unusual that there's one case where there are two possible circuit splits. We talked about the possible circuit split on effective vindication. My friend on the other side has just proposed a new circuit split on how a plan is amended. There is lots of law from your sister circuits that it is the plan's consent to an amendment, including an amendment to add an arbitration provision, that matters. I think the most recent authority on this is from the Third Circuit. It's the Berkelhammer of the ADP total source case cited in our papers that says the quote is in there. It is the plan's consent that matters. That's consistent. We talked about the Ninth Circuit's holding in Plan C Sodecco. My friend on the other side. But does that beg the question of whether the plan consented? Well, here I don't think there's any question that the amendment that was made here by the plan sponsor, that's how these amendments are made. They're made by the plan sponsor in its settlor capacity, not its fiduciary capacity. The plan sponsor or the plan documents are the constitution of these plans, and it is the plan sponsor who gets to amend the constitution of the plan that they are sponsoring. Another is at the district court level, but the Harris v. Paredes case cited in our papers is another one that stands for the proposition. It is the plan's consent through this amendment process through the plan sponsor that matters, and that's what occurred here. And I would like to really root the court and root this argument in what's at stake, because it is a contractual arbitration clause that's in the record at Record on Appeal 157 through Record on Appeal 169. That's this arbitration provision. There's only one provision in it that is problematic, and that's found on Record on Appeal 167 at subpart H, which is one of these 11 pages attempts to suspend the class or collective action device. But I think that is undone on this last page, Your Honors, 169, Record on Appeal 169. Again, the severance provision could not be any more clear or any more standard from the law of contract. If any provision of this section is adjudged to be void or otherwise unenforceable in whole or in part, the void or unenforceable provision shall be severed, and such adjudication shall not affect the validity of the remainder of this section. If they're right on effective vindication, then we are headed to an arbitration that handles a class or collective action. It doesn't suspend the rest of the provision, which calls for arbitration. And the fact that Mr. Parrott has not individually consented to arbitration is certainly relevant to his individual claims, but not to the plan's own claims or to the class, the punitive class claims that he attempts to represent. And if the panel were to follow the route laid out by my friend on the other side and find that this was an invalid amendment of the plan, I think that would be breaking with the Third and Ninth Circuits that have said it's the plan's consent that matters through this settlor function performed by the plan sponsor. And I think that would be, in many ways, a more problematic circuit split, because it would imperil not just arbitration, but any amendment to any ERISA plan anywhere, because as Judge Wilson pointed out a few moments ago, there are lots of plans with lots of amendments, and this Court would be rocking the foundation of how those amendments are made. A couple more thoughts. We go into some depth on this in our reply brief at page 10 of our reply and how it is the modification of the written plan documents that govern here, and that's all we're asking for, is an application of the arbitration clause, including, if necessary, the severance clause. And I think the result of applying effective vindication, whether it's applied by this Court or whether it would be applied on remand by the District Court, would be invalidating that subpart that we looked at on Record on Appeal 167, that prohibition on class or collective actions, but otherwise leaving the arbitration provision intact and allowing that arbitration to go forward to adjudicate the rights of the plan and of the putative class members. Unless the panel has any questions for me, I see my time is up. I thank the panel for their time and attention today. Thank you. Thank you to both counsel for your very good arguments in this really interesting ERISA case. Thank you, Your Honor. Thank you. The Court will stand in recess until 9 a.m. tomorrow.